IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

vs.                                                                                                                                                            Civ. No. 18-3125 JCH

**TRANQUILO VALENCIA,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Motion to Suppress the Results of an Unduly Suggestive Identification Procedure* [Doc. 21], to which there has been a response [Doc. 25] and a reply [Doc. 32]. On August 24, 2019, the Court held an evidentiary hearing on the motion, at which Defendant Tranquilo Valencia ("Valencia") was present. After considering the briefs, the evidence, and the arguments of counsel, the Court concludes that the motion to suppress should be denied.

## FACTUAL BACKGROUND

Based on the evidence presented at the hearing, the Court finds the following facts. On October 12, 2017, Kazuhiro Fujisawa and four friends drove in Fujisawa's blue Honda Civic from their home in Arkansas to New Mexico in order to attend the Albuquerque International Balloon Fiesta. That night, they camped at the Dalton Campgrounds near Pecos, New Mexico. Fujisawa testified credibly that on the morning of October 13, 2017, Fujisawa and one of his friends, Pierce Fonville, were awake. The pair was waiting for the other three, who were asleep in a tent, to wake up. Fujisawa testified that he was wearing his glasses and it was light out. A man driving a red

Toyota sedan with a female passenger entered the campsite. The man got out of the red Toyota and initially had a friendly demeanor as he asked the two men a few questions, such as "How are you?" and "Where are you from?" Then the driver's demeanor changed as he asked Fujisawa if he could have the blue Honda Civic. The driver pulled out a gun, started yelling, and demanded the keys to the blue Honda Civic. He pointed the gun alternately between Fujisawa and Fonville. During the interaction between the driver and Fujisawa, the two men were approximately fourteen feet apart. Fujisawa described the driver as Hispanic, not fat, not tall, dark hair, with a tattoo on his neck and a tattoo of a cross on his face near one eye.[1]

    The other three friends, who were awake by now, remained hidden in the tent. The driver continued to shout at Fujisawa and Fonville and to curse at them. He demanded that Fujisawa and Fonville give him their cell phones and wallets. Fonville told the carjacker that his phone was in the Honda Civic, though in fact that was not true. Fujisawa tossed his keys, wallet, and cell phone to the carjacker, who kept the gun pointed at the men as he yelled at the woman to get out of the red car and into Fujisawa's blue Honda Civic. At some point, the carjacker threw the keys to the red sedan onto the ground and told Fujisawa he could use that car to drive back. The carjacker and the woman both got into Fujisawa's blue Honda Civic. As he did so, the carjacker fired his gun above the heads of Fujisawa and Fonville. Then he drove away from the campsite at a high rate of speed, leaving behind the red sedan the pair had arrived in. Fujisawa testified that the interaction with the carjacker lasted about ten minutes.

---

[1] The Defendant knowingly and voluntarily waived his right to be present in the courtroom during Fujisawa's testimony, and therefore Fujisawa was not looking at Defendant when he described the driver of the red sedan. However, the Court notes for the record that Defendant appears to be an Hispanic male of average build with dark hair, a tattoo on his neck, and a tattoo of a cross near one eye.

The group of friends then hiked out to the highway, where they were able to flag down a passing truck and call the police. After interviewing the five witnesses, New Mexico State Police transported them to Santa Fe. There, the group of friends rented a car and drove back to Arkansas. During their drive, Officer Jerry Santana of the New Mexico State Police contacted Fonville on his cell phone, which had not in fact been in the stolen Honda Civic. In an effort to identify the woman who was with the carjacker, Santana texted Fonville a photograph of three individuals—two men and one woman—that police had pulled off of Facebook. Fonville showed the picture to Fujisawa, who was in the same car. Fonville then responded to Santana that one of the men looked familiar, but that the woman had looked to be in a much rougher condition and that "it could be, but we aren't positive." Next Santana texted Fonville a picture of a woman alone, taken by the Motor Vehicle Division. Fonville showed the picture to Fujisawa, who felt about 70% sure that this had been the woman involved in the carjacking. Fonville responded to the police, "Yes that does look more familiar to the both of us." Then Santana texted Fonville a picture of Defendant obtained from the Motor Vehicles Division. When he saw the picture, Fujisawa was certain that this had been the male who carjacked him. Fonville responded via text, "THAT IS HIM. 100%." Santana replied, "Good thank you," to which Fonville texted, "Yes. I have no doubt." Fujisawa and Fonville made this identification approximately five hours after the carjacking had occurred. At the August 22, 2019 hearing, Fujisawa testified credibly that when Fonville showed him the picture of Defendant that Santana had texted, he had no doubt at all that Defendant was the carjacker.

It is undisputed that Santana's method of obtaining an identification of the Defendant did not comport with the New Mexico Department of Public Safety Policies and Procedures.

## LEGAL STANDARD

The Supreme Court has developed a two-prong test for deciding whether to suppress allegedly unreliable eyewitness identifications. First, the court asks whether law enforcement's challenged identification procedures were impermissibly suggestive. If so, the court must then determine whether the resulting identification is "nevertheless reliable in view of the totality of the circumstances." *United States v. Sanchez*, 24 F.3d 1259, 1261-1262 (10th Cir. 1994).

The first inquiry focuses on the propriety of the government's conduct; an identification procedure that is unduly suggestive raises constitutional concerns. *See Perry v. New Hampshire*, 565 U.S. 228, 248 (2012) (finding that due process concerns are only triggered where police arrange a suggestive identification; in the absence of improper police behavior, courts need not inquire into the reliability of an identification). The second inquiry focuses on the reliability of the identification given the totality of the circumstances. Only if the Court answers both questions in the affirmative, *i.e.* if the identification procedures are unnecessarily suggestive and the identification is so unreliable that it would be unfair to present it to the jury, will the court suppress an eyewitness identification. "When a pretrial identification occurs under impermissibly suggestive circumstances and the in-court identification of the witness is unreliable, the identification should be excluded." *Snow v. Sirmons*, 474 F.3d 693, 720 (10th Cir. 2007).

## DISCUSSION

**I.    Was the Identification Procedure Unnecessarily Suggestive?**

The Supreme Court has looked unfavorably on "show-up" procedures—that is, procedures where the police show the witness a single suspect and ask whether or not the witness can identify the suspect as the perpetrator of the crime. For example, *in Stovall v. Denno*, 388 U.S. 293 (1967),

*overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987), the first Supreme Court case regarding identification procedures, the Supreme Court acknowledged that the "practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Id*. at 302. More recently, the Supreme Court affirmed that the police-arranged hospital show-up at issue in *Stovall* was "undeniably suggestive," but explained that the *Stovall* Court had upheld the procedure under the due process clause because the procedure was necessary. *Perry*, 132 S. Ct. at 724 (noting that necessity was "crucial" to the *Stovall* decision).

Similarly, the Tenth Circuit Court of Appeals has declared that "show-up identifications (those involving the identification of a single individual) are less than ideal" and "should be employed only if compelled by extraordinary circumstances." *United States v. Natalini*, 42 Fed. Appx. 122, 127 (10th Cir. 2002). Other circuits agree that show-up procedures are inherently suggestive and their use is improper unless the procedures are necessary under the circumstances. *See United States v. de Jesus-Rios*, 990 F.2d 672, 677 (1st Cir. 1993) (agreeing that in-person show-up procedure was impermissibly suggestive); *Mason v. United States*, 414 F.2d 1176, 1182 (D.C. Cir. 1969) (excluding pre-trial eyewitness identification because "[t]he showing of a single photograph is, like all identification procedures involving a single suspect, highly suggestive" and the procedure was "completely unnecessary"); *United States v. Thomas*, 981 F. Supp. 2d 229, 234 (S.D.N.Y. 2013) ("The Second Circuit has consistently condemned the exhibition of a single photograph as a suggestive practice, and where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one."). This skepticism is logical: "[T]he single photo or one-person show-up implies that the police have their man and suggests that the witness give assent. Suggestibility is one of the principal ways in which memory plays tricks and leads to improper identifications." *United States v. Brown*, 471 F.3d 802, 804 (7th Cir. 2006). Avoiding the use of

5

show-up procedures, where feasible, minimizes the risks of misidentification that are associated with asking a victim or witness to accurately remember and identify a stranger, who was observed only briefly, during a traumatic crime. *Id*.

The Government admits that the identification procedure was suggestive, but argues in its brief that it was not unnecessarily so. However, the Government has not explained why this procedure was necessary. Santana testified that he had no authority to keep Fujisawa, Fonville, and the others in New Mexico until he was able to provide them with a proper photo array. However, he did not adequately explain why he sent Fonville pictures of the Defendant only. Santana gave no explanation of his decision not to text an array of photos to Fonville instead. Thus, the Court concludes that the identification procedure was unnecessarily suggestive.

## II. Reliability Under the Totality of the Circumstances

The use of suggestive police procedures is not enough, standing alone, to require suppression of the resulting eyewitness identification. Once a defendant shows that police employed impermissibly suggestive procedures, "[t]he totality of the circumstances must be considered to determine whether sufficient independent basis for the identification leads one to conclude that the identification is [nonetheless] reliable." *Snow v. Sirmons*, 474 F.3d 693, 720 (10th Cir. 2007) (quoting *United States v. Williams*, 605 F.2d 495, 498 (10th Cir. 1979)). The Tenth Circuit has held that a photo array consisting of only one photo—like this case—can be sufficiently reliable to satisfy due process under certain circumstances:

> Even if a photo line-up is unnecessarily suggestive, it will not invalidate a subsequent in-court identification unless the line-up is so unnecessarily suggestive that it overwhelmed the other indicia of reliability that might validate the in-court identification. Indeed, a photo array consisting of only one photo may be acceptable if the witness has had a clear opportunity to positively identify the suspect prior to

> the array, the witness expresses a great deal of certainty with regard to the identification, and the circumstances of the identification show a lack of coercive pressure on the identifying witness to make an identification from that photo.

*United States v. Flores*, 149 F.3d 1272, 1278-79 (10th Cir. 1998) (internal citation omitted). Additional factors the Tenth Circuit has considered when a photo array is found to be unduly suggestive include the witness's level of attention during the crime, the accuracy of the witness's prior description of the suspect, and the time lapse between the crime and the array. *United States v. Kamahele*, 748 F.3d 984, 1020-21 (10th Cir. 2014).

Here, the Court concludes that Fujisawa's identification of the Defendant based on the photograph that Santana texted to Fonville was reliable under the totality of the circumstances. First, Fujisawa had extensive opportunity to observe the suspect. According to Fujisawa, he interacted with the carjacker for about ten minutes, and for at least some of that time the carjacker had his gun pointed and was shouting obscenities at Fujisawa, which naturally held Fujisawa's close attention. In addition, during the encounter it was daylight, Fujisawa was wearing his glasses, and the carjacker was standing only about 14 feet away from him.

Second, Fujisawa gave a high level of attention to the carjacker. The unusual nature of their initial interaction, in which the carjacker appeared friendly and was asking questions, followed by the threatening nature of his shouting and threatening with the gun, kept Fujisawa's attention. Furthermore, there were no other people or activities in the campground to distract Fujisawa's attention. The woman passenger remained silent and seated in the red sedan for most of the encounter, and Fujisawa's other friends stayed hidden in their tent. That left only Fujisawa, Fonville, and the carjacker to interact during the crime.

7

Third, Fujisawa testified credibly that he was very certain, both during the drive back to Arkansas and at the time of the hearing, that the man in the DMV photograph texted by Santana was the carjacker. Fujisawa's level of certainty in identifying Defendant based on that photo can be contrasted with his unwillingness to identify anyone in the Facebook photo first texted by Santana, as well as his less certain identification of the woman who was with him based on a DMV photo of her. Fujisawa acknowledged, both during the text exchange with Santana and at the motion hearing, that he was only 70% certain that the DMV photograph of the woman that Santana texted to Fonville had been the same woman who was with the carjacker. Fujisawa acknowledged that he had less opportunity to observe the woman, which had impacted his ability to identify her. However, given the amount of time he had spent in a face-to-face encounter with the carjacker, Fujisawa was very confident in his identification of him. Fujisawa's willingness to admit when he is not certain about an identification shows that he was unwilling to rush to judgment. This too lends credibility to Fujisawa's confident identification of Defendant.

Fourth, Fujisawa's initial identification of the Defendant occurred only five hours after the carjacking. Thus, there was very little time for Fujisawa's memory to become stale or distorted.

Finally, there is no evidence of any coercive pressure on Fujisawa to make an identification. Fujisawa was on his way home at the time, free of any police influence or pressure. In fact, Fujisawa was not even the person engaging in text messages with Santana. Instead, he looked at the photograph Santana texted to Fonville and voiced his certainty that the person in the photo was the carjacker.

For all of the foregoing reasons, the Court concludes that despite the fact that the identification procedure was unnecessarily suggestive, the totality of the circumstances

surrounding that identification demonstrate that it was reliable. Accordingly, the motion to suppress will be denied.

**IT THEREFORE ORDERED** that *Defendant's Motion to Suppress the Results of an Unduly Suggestive Identification Procedur*e [Doc. 21] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**